HAMITER, Justice.
 

 In this action for specific performance -plaintiffs, Dr. Spencer B. Lake and Dr. E. A. Schexnayder, seek to obtain title to certain real estate situated in the City of Donaldsonville of the Parish of Ascension, their claimed rights thereto being predicated on an alleged offer to purchase made to and accepted by the then owners who are the principal defendants herein and on a purported option granted by Ulysses Rousseau, the ancestor in title of such defendants.
 

 On February 17, 1947, according to the allegations of the petition, the said Ulysses Rousseau leased the property to plaintiffs for a term of five years. Among the provisions of the lease, which was in writing and recorded February 26, 1947 in the Conveyance Records of Ascension Parish, was the following option clause relied on by plaintiffs herein: “It is further understood and agreed that as a part of the consideration of this lease, the lessor grants unto the lessees herein first option to purchase and acquire said leased property should lessor wish to sell same, and that, at the death of lessor, the option is granted lessees the right to purchase said leased premises, the price both hereinabove and at the death of lessor of said leased premises is to be set and fixed by two appraisers of any local homestead association or of any banking institution.”
 

 Under such lease plaintiffs assumed and they have since maintained possession of the property. Meanwhile, specifically on January 3, 1951, Ulysses Rousseau died in
 
 *51
 
 testate, leaving as his sole and only heirs at law the principal defendants herein.
 

 Plaintiffs, to quote Articles 15 through 21 of their petition, also alleged: “That shortly after the death of the said Ulysses Adam Rousseau, petitioners notified the said Rousseau heirs that petitioners desired to exercise the above described option for the purchase of said property upon the death of the said Ulysses Adam Rousseau.
 

 “That- after some negotiations between petitioners and the said Rousseau heirs, the said Rousseau heirs, acting through their attorneys,-Henican, James & Cleveland and Blum <% Marchand [these law firms are located1 in New Orleans and Donaldsonville, respectively], ¡requested petitioners to make them, the said Rousseau heirs, an offer for the said property.
 

 -“That thereupon, petitioners made an offer to 'the said' Rousseau heirs, through the said Blum- & Marchand, to purchase the said property for the sum of Thirteen Thousand & No/100 ($13,000.00) Dollars, which offer was' communicated by George R.' Blum, a member of the said Blum & Marchand, to Phillip E. James, a member of the firm of the said Henican, James & Cleveland, in a letter dated May 7th, 1951, and thereupon said offer was communicated ■by the said Phillip E. James to the said Rousseau heirs.
 

 “That thereafter on or prior to the 11th day of May, 1951, the said Rousseau heirs accepted said offer, and in a letter from the said Phillip E. James to the said George R. Blum, dated May 11th, 1951, the said Phillip E. James communicated such acceptance to the said George R. Blum for communication by the latter to petitioners.
 

 “That on the 12th day of May, 1951, the said George R. Blum communicated said acceptance to petitioners.
 

 “That in a letter dated the 15th day of May, 1951, to the said Phillip E. James from the said Dr. Spencer B. Lake, petitioners persisted in their said offer and reiterated their willingness to buy the said property from the said Rousseau heirs for the price of Thirteen Thousand & No/100-. ($13,000.00) Dollars, cash, in accordance with said offer and said acceptance.
 

 “That, therefore, in view of said option and said offer and said acceptance, petitioners are entitled to buy and acquire said property either for the price of Thirteen Thousand & No/100 ($13,000.00) Dollars as fixed by said offer and said acceptance or for a price to be fixed by appraisal in accordance with the terms of said option.”' (Brackets ours)
 

 The petition further recited that the Rousseau heirs, without any prior notice to plaintiffs and by a notarial act passed on May 24, 1951, purported to sell the property to Earl L. Ewen, another defendant herein, for the price and sum of $15,000.
 

 Plaintiffs prayed for judgment annulling and cancelling the sale to Earl L. Ewen. Additionally, they prayed for specific performance of the obligation of the Rousseau heirs to transfer the property to them for
 
 *53
 
 the agreed price of $13,000 or for a sum to be determined in accordance with the provisions of the purchase option.
 

 The petition was met with exceptions of no right and no cause of action. These were overruled. Then, with full reservation of their rights under the listed exceptions, the defendants answered.
 

 Thereafter, the case was tried on its merits, the trial resulting in a judgment in favor of plaintiffs. The court decreed a cancellation of the sale to Earl L. Ewen, and it ordered the Rousseau heirs to transfer title to plaintiffs for the consideration of $13,000 cash.
 

 Defendants are appealing from the judgment, urging first that the exceptions of no right and no cause of action should have been maintained.
 

 The exception of no cause of action, in our opinion, is meritorious. With respect to the offer to purchase for $13,000, allegedly made to and accepted by the Rousseau heirs, the petition clearly shows that plaintiffs dealt exclusively with the attorneys for the former; and nowhere therein is it recited that such attorneys were authorized to bind their clients to a contract of sale. A mandate to buy or sell, as stated in LSA-Civil Code Articles 2996 and 2997, must be express and special; if conceived only in general terms it does not suffice. In fact, the law provides that a power of attorney to make a contract relating to the alienation of real estate must be in writing — a requirement like that applicable to the contract of sale itself. Turner v. Snype, 162 La. 117, 110 So. 109. See also Milburn v. Wemple, 156 La. 759, 101 So. 132; Triangle Farms, Inc., v. Harvey, 178 La. 559, 152 So. 124 and Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682. And the existence of a relationship of attorney and client does not give rise to a presumption that the attorney has authority, as an incident of that relationship, to dispose of his client’s property. It is not the ordinary ^ role of an attorney to sell his client’s real estate. Milburn v. Wemple and Bordelon v. Crabtree, both supra.
 

 As pointed out above there are no allegations of fact in the instant petition from which it might be concluded that the Rousseau heirs granted any express authority to their attorneys to confect for them a binding agreement to sell.
 

 Of course, the lease held by plaintiffs contains a purported option to purchase. But is that option definite as to the price to be paid and, accordingly, in compliance with the requirement of LSA-Civil Code Article 2464 that, in order to be valid and enforceable, the “price of the sale must be certain, that is to say, fixed and determined by the parties”?
 

 Maintaining that such requirement is satisfied here, counsel for plaintiffs, to quote from their brief, state: “A contract to sell or an option to buy which provides that the price to be paid for the property shall be left to the arbitration of a third
 
 *55
 
 person or third persons and which either expressly or impliedly authorizes the judge or the courts to appoint such third person or third persons is valid and enforceable from the moment of its having been entered into.”
 

 Assuming arguendo that the quoted excerpt from the brief of plaintiffs’ counsel represents a correct statement of our law, we do not' find it pertinent here for the reason that the option in question admittedly contains no express grant of authority for the court’s appointment of experts to determine, through arbitration, the price to- be paid for the property; nor is such authority provided by implication, as plaintiffs contend. The particular clause under consideration recites merely “that, at the death of lessor, the option is granted lessees the right to purchase said leased premises, the price * * * at the death of lessor * * * is to be set and fixed by two appraisers of any local homestead association or of any banking institution.” There is no language in this recital or in any other portion of the agreement indicative of an intention of the parties that the court should intervene in the consummation of their contract; and we know o.f no law requiring it so to do.
 

 Seemingly, the authority for the selection of both appraisers is impliedly given to the Rousseau heirs. Under the remaining portion of the option provisions the lessees had the “first option” of purchasing the • property “should lessor wish to sell same”; and the setting of the price was (as also' provided for at lessor’s death) to be left to two appraisers “of any local homestead association or of any banking institution.”' Very likely this contemplated the lessor’s, appointment of both experts, for there was. no obligation on his part to sell and lessees had only the right of “first refusal”' in the event he offered the property for’ sale. This being true the matter of selection, on lessor’s death, apparently was to* devolve on those inheriting from him, the-Rousseau heirs.
 

 But whether the parties intended that the-selection was to be made by the heirs of the lessor or by the lessees or by them jointly-it must be concluded that the instant option was indefinite as to price and that, there was no compliance with the requirement of LSA-Civil Code Article 2464. Where the price of a sale is to be determined and fixed in the future by experts, to be named by the parties, as here, any one of the latter has the power to refuse-to appoint; and the result of the arrangement is an uncertainty of price and a consequent nullification of the contract. See Louis Werner Sawmill Company v. O’Shee,. 111 La. 817, 35 So. 919.
 

 For the reasons assigned the judgment: of the district court is reversed and set. aside, the exception of no cause of action is sustained, and the suit of plaintiffs is. dismissed at their costs.
 

 HAWTHORNE, J., absent.