131 So.2d 606 (1961)
Mary L. CHANDLER, Plaintiff-Appellee,
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY, et al., Defendants-Appellants.
No. 9530.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1961.
Rehearing Denied July 7, 1961.
*607 Carl F. Walker, Monroe, for appellants.
Joseph R. Bethard, Shreveport, Barham, Wright & Barham, Ruston, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
This is a suit by plaintiff, Mary L. Chandler, a femme sole, for the recovery of damages for personal injuries, together with medical and hospital expenses, resulting from an automobile accident. Named as defendants are Grain Dealers Mutual Insurance Company and their assureds, Fred B. Wilder and wife, Mrs. Mary Lou Wilder. From a judgment in favor of plaintiff and against the defendants, in solido, in the principal sum of $14,453.88 the defendants prosecute this appeal. Plaintiff has answered the appeal, praying an increase in the amount of the judgment to the sum of $95,653.88.
The pertinent facts and appropriate conclusions drawn therefrom were stated in an excellent written opinion of the district judge, who had the advantage of being thoroughly familiar with the locale of the accident. Because we are in full accord with his statement of facts, we set forth and adopt the same as exemplified in the said opinion, to-wit:
"The facts of the case are not too difficult. They show that Mrs. Mary L. Chandler, accompanied by Miss Carolyn Sue Woodard, left Shreveport in the late afternoon of May 4th, 1959 to make a trip to Monroe, Louisiana where they were to attend a wrestling match. They had traveled together through the business section of the City of Ruston and at the time of the accident were traveling that portion of U. S. Highway No. 80 in the eastern edge of the City of Ruston where the highway is apparently an open highway where there are few if any, cross streets, but which section of Ruston and which highway contains some of the better homes of the city. These homes, however, are located quite "a distance back from the highway itself and most, if not all of them, are surrounded by beautiful trees and shrubbery and the occupants of the homes have private driveways which come out to and enter into Highway 80. The home of Mr. and Mrs. Wilder is located on the south side of said highway and is one of those homes which sits far back off of the highway itself, and which has a private driveway for the entry of the occupants of the home onto Highway 80.
"On the day of the accident, which took place as stated, after dark at about eight o'clock P.M., Mr. and Mrs. Wilder were in the process of making a trip into the business section of Ruston and Mrs. Wilder was driving her Cadillac automobile and her husband was occupying the front seat with her. The testimony shows that Mrs. Wilder drove her automobile out to the edge of Highway 80 to a point where she could see the traffic both east and west of the point where her driveway comes up to and enters into the highway. She testifies that she looked first to her left or back toward the west and that she saw the approaching automobile which was later identified as being the automobile driven by Mrs. Mary L. Chandler, but she believed that the automobile was some distance down the highway and presented no hazard to her entry into Highway 80. She then looked back to her right, or to the east, and saw no traffic, and apparently without again looking back to the west, she began the motion *608 of entering into the Highway 80. She had not traversed the south lane of said Highway 80 when her Cadillac automobile was struck in the left side by the Ford automobile being driven by Mrs. Mary L. Chandler. The contention of the plaintiff in the case is that the fault was solely and entirely that of the defendant, Mrs. Mary Lou Wilder, in entering into this dangerous and heavily traveled Highway 80 without maintaining a proper lookout and without determining that an entry could be made thereon without danger. The defendants on the other hand contend that the accident was the fault of Mrs. Mary L. Chandler in that she was driving her automobile at an excessive and unlawful rate of speed, within the city limits of Ruston where the thirty-five mile per hour speed limit was in force, and that the speed of the Chandler automobile was the cause of the accident barring her recovery in this case.
"After listening to the evidence that was given in the case and considering the law that has been cited to the Court by counsel for both sides in this matter, this Court has reached the conclusion that the proximate cause of the accident was the lack of caution on the part of Mrs. Mary Lou Wilder. The law requires one who is entering upon such a highway as U. S. Highway 80 from a private driveway or from an inferior road to exercise a great degree of caution. Now, in this case, Mrs. Wilder approached the edge of Highway 80 and brought the automobile which she was driving to a stop and that is one of the requirements of the law under such circumstances, yet the bringing of a vehicle to a complete stop is only a part of the responsibility of one under such circumstances, for after bringing the automobile to a stop, it is further the duty of the driver to remain in a stayed position and not move out onto the highway unless and until they have used every reasonable precaution to determine that there is no approaching vehicles (sic) on the favored highway which would endanger the parties upon such entry.
"In this case, the Court is of the opinion that Mrs. Wilder looked to her left or to the west and saw the approaching automobile being driver by Mrs. Mary L. Chandler, but that she misjudged the distance that said automobile was from the point where her driveway enters the highway as well as the speed at which that automobile was traveling and without making certain that she could safely enter onto the highway, she made the effort to enter the highway and thereby brought about the collision or accident. It would have been impossible for Mrs. Mary L. Chandler's automobile to have been 900 to 1100 feet from the intersection of the driveway at the time Mrs. Wilder began her entry into Highway 80. She must have been considerably closer than that and it was the duty of Mrs. Wilder to determine and to see that which she could have seen and should have seen and having failed to do so, the Court must conclude that it was her fault which brought about the accident here under consideration, nor does the Court believe that the speed of the automobile being driven by Mrs. Mary L. Chandler was an approximate cause of the accident in this case, even though she may have been driving in excess of the legal speed limit fixed by the ordinance of the town of Ruston.
"The highway, at that point, is, to one who is not familiar with it, apparently an open highway and the homes which may be situated along said highway are far enough back from the highway that one not familiar with it would not see them. The evidence in this case however, shows that Mrs. Chandler saw the Wilder automobile as it came to a stop in the driveway before entering the highway and she assumed, and the Court believes she had a right to assume, that said automobile would remain in its stopped and safe position until after Mrs. Chandler's automobile had passed. There is no evidence that Mrs. Chandler was traveling at an excessive speed other than the fact that she arrived at the point of collision sooner than Mrs. Wilder had *609 expected her to arrive at that point, and even though Mrs. Chandler may have been driving her automobile at more than thirty-five miles per hour and even up to fifty miles per hour, the Court could not, under the evidence, conclude that this, within itself, was the reason or was the approximate cause of the accident itself, but the Court concludes that the accident took place actually because Mrs. Wilder first looked toward the west and saw an approaching automobile and according to her testimony she then looked to her right or toward the east and seeing no automobile, proceeded out into the highway without again looking in the direction from which the Chandler automobile was approaching and the time that passed between her observation of the traffic toward the west and the look toward the east and then the entry onto the highway was such that the Chandler automobile was, at that time, too close to the intersection of the driveway to stop in time to avoid the collision. The evidence shows that Mrs. Chandler applied her brakes and skidded her wheels for approximately seventy feet before she collided with the Cadillac automobile being driven by Mrs. Wilder. The accident took place in the south or right lane of traffic insofar as Mrs. Chandler was concerned, and it seems to be fairly certain that the entry of the Wilder automobile into the traffic lane in which Mrs. Chandler was traveling presented an emergency situation and an unavoidable condition that brought about the collision between the two automobiles. It is, therefore, the conclusion of the Court, that this accident and the resulting damage is due to the negligence of Mrs. Mary Lou Wilder and that since she and her husband were on a community mission, that they are jointly liable and responsible for the resulting injuries and damages that the accident caused."
Elaborating upon and supplementing the above statement of facts, we call particular attention to the principal defenses urged against plaintiff's action on the ground that the excessive speed of plaintiff's car constituted the sole and proximate cause of the accident, and, alternatively, that plaintiff was guilty of contributory negligence not only with respect to the speed of the vehicle she was driving but in her failure to maintain a proper lookout; in the operation of her automobile in such manner as to ignore the rights of others and failure to follow the ordinary rules of common care and prudence.
By way of a basis for our discussion of the above defenses we begin with the averments contained in Article 14 of defendant's answer, which read as follows:
"And now, answering further, defendants show that the accident complained of herein occurred on May 4, 1959, at approximately 8:00 P.M. at a point on U. S. Highway 80, which is well within the city limits of Ruston, Louisiana; that the defendant, Mrs. Mary Lou Wilder, was proceeding from the driveway of her residence, which connects with U. S. Highway 80 in the residential section of Ruston, Louisiana; that the said Mrs. Mary Lou Wilder was operating her vehicle in a cautious and prudent manner, and that before entering upon U. S. Highway 80 she brought her vehicle to a stop and made observation for traffic on U. S. Highway and saw only one vehicle, that operated by the plaintiff, which had very dim lights, moving in an Easterly direction, and that said vehicle operated by plaintiff was at that time some 400 yards West of the point where the defendant's driveway intersects the said highway; that defendant presumed that the said 1954 Ford was being operated at a lawful rate of speed, and that therefore she had ample time to enter onto the said highway and clear the Eastbound lane without in any way interfering with the operation of the said 1954 Ford; that the defendant then proceeded onto the said highway and after her vehicle was already partially on the highway she became *610 aware that the 1954 Ford was approaching at a very fast, excessive and unlawful rate of speed, which created a trap for the said defendant since she was unable to do anything to avoid being hit because of the speed with which the said 1954 Ford covered the distance from the point where it was first observed to the point where defendant was entering onto the said highway; and that therefore defendant was not negligent in the operation of her said vehicle."
Mrs. Wilder's testimony on trial of the case, substantially corroborated by that of her husband, was in almost exact accord with the facts as above pleaded. However, there can be no question that this testimony was in error in some respects. First, we point out that it is utterly incredible that Mrs. Wilder could have observed plaintiff's automobile 1,200 feet distant from the intersection of her private driveway and Highway 80, presumed that it was moving at a lawful rate of speed, proceeded into the highway and been struck by said vehicle. By way of illustration of the impossibility of the concurrence of these factual circumstances, if we assume that the Wilder car was moving at a speed of only two miles per hour, that it had approximately 30 feet to clear the south lane of travel of the highway, the requisite speed of the plaintiff's automobile in moving 1,200 feet would have necessarily been at least 80 miles per hour, making no allowance for the reduction of this speed by the application of brakes. No such speed is even contended by the defendants. We think the true facts have been concisely delineated by the district judge which were that Mrs. Wilder observed the eastbound approach of plaintiff's car without noting any unusual speed thereof, then looked in the other direction, completely failed to keep the approaching Chandler automobile under observation and moved out into the highway directly in its path. We think these acts convincingly establish the gross negligence of Mrs. Wilder under the circumstances as being the sole and proximate cause of the accident. We comment further in this respect that, in our opinion, the record does not establish excessive speed on the part of the Chandler automobile.
It is further to be noted that Mrs. Wilder was unquestionably in error with reference to her testimony on two other points. She was positive as to the fact that there was no other vehicle approaching from either direction, but this circumstance was squarely refuted and completely overcome by the testimony of one of the witnesses for plaintiff, Ann Tippitt, who was driving west on the highway, saw the Wilder Cadillac stopped at the edge of the driveway and testified that she had proceeded approximately 100 feet past said driveway when the accident occurred. The other point relates to the condition of the headlights of the Chandler car. Defendant's answer, above quoted, states that plaintiff's car "had very dim lights," but Mrs. Wilder testified that only one headlight of the Chandler car was burning. The testimony of plaintiff, her companion, Miss Woodard and Miss Tippitt, completely controverts any conclusion that the headlights of the Chandler car were defective. In any event, no relation is shown between such purported defect and the occurrence of the accident.
On the point of speed as a primary or contributing cause, counsel for defendant cites Payton v. Great American Indemnity Co., La.App., 83 So.2d 575 (writs denied); and Gerrets v. Reed, La.App., 99 So.2d 408.
The Payton case and the citations contained therein is reliable authority for the proposition that the primary duty of avoiding a collision rests upon the driver of a vehicle entering a public highway from a private drive, and that a driver complies with such a requirement if an approaching vehicle is at a sufficient distance as would justify a reasonably prudent person in attempting to negotiate an intersection without danger of collision; *611 that this latter conclusion was justified in the cited case is specifically noted in the opinion which relied upon the fact that the plaintiff had actually reached a place of safety on the opposite side of the highway. The opinion further noted that the driver of the offending vehicle failed to observe the movement of the plaintiff's truck until within a distance of some 20 feet therefrom. In the Gerrets case we noted that it was definitely established, and practically conceded by defendants, that the defendant truck driver was guilty of negligence under the facts of the case in exceeding the maximum speed limit 25 miles per hour.
The facts involved in the cited case do not comport in the slightest degree with those which we hold to be indisputably established in the instant case. As above noted, Mrs. Wilder did not maintain her observation of the approaching car and her supposition that she could enter the highway and make a left-hand turn in safety was unsupported by any foundation in fact. Additionally, it must be noted that the plaintiff, Mrs. Chandler, observed the Wilder car stopped in the driveway at the entrance to the highway and assumed that it would remain in such position to permit her passage, in which assumption she was completely supported and justified under legal principles which have been so often enunciated by our courts as to obviate the necessity for citation. See Platt v. Scarborough, La.App., 108 So.2d 802 and the authorities therein cited, particularly with respect to the provisions of the Highway Regulatory Act, LSA-R.S. 32:237, subd. E., requiring the driver of a vehicle entering a public highway to yield the right-of-way to all vehicles approaching on the public highway.
On trial of the case counsel for plaintiff timely objected to the introduction of a municipal ordinance of the City of Ruston which fixed the maximum speed of vehicles in the vicinity where the accident occurred at 35 miles per hour. The objection was based first upon the ground that the violation of a municipal ordinance had not been pleaded, wherefore the attempted introduction of the ordinance was an enlargement of the pleadings, and, second, it did not comply with the requirements of LSA-R.S. 13:3712 under the provisions of which it was tendered. Although we are of the opinion, in view of our finding that the speed of plaintiff's car did not cause or contribute to the occurrence of the accident, that this point is immaterial, nonetheless, at the risk of burdening this opinion with an enunciation which may be considered obiter dictum, we think the objection was well taken on both points. Although defendant's answer alleged excessive speed, it did not specifically assert a violation of any municipal ordinance in this respect, and therefore the attempt to offer such an ordinance would clearly have the effect, if permitted, of enlarging the pleadings. Nor was it shown that the certified copy which was offered complied with the provisions of the statute, LSA-R.S. 13:3712, subd. B., which reads as follows:
"B. All courts of record in the state shall take judicial cognizance of the municipal ordinances and parochial ordinances which may be enacted by governing authority of any town, city, municipality, or parish within their respective jurisdictions whenever certified copies of such ordinances have been filed with the clerk of said court. The clerk shall keep a record of such ordinances filed with him. It shall not be necessary to file more than one copy of any ordinance with the clerk in order that judicial cognizance be taken thereof. Such certified copies may be filed with the various clerks of court either by the proper custodian of the ordinances of respective town, city, municipality or parish, or any lawful officer of the court."
The copy of the ordinance tendered in evidence in the instant case *612 bore the certificate of the Mayor, but it was not shown that such official was the keeper of the records. Additionally, it must be observed that the above quoted provision requires judicial notice of a municipal ordinance only when a certified copy thereof has been filed with the Clerk of Court. The requirement was not established in connection with the tender of the ordinance and it would therefore appear obvious that the objection should have been sustained and the admission of the document in evidence refused.
Being in complete agreement with the factual findings and conclusions of the district judge to the effect that the negligence of Mrs. Wilder was the sole and proximate cause of the accident, we proceed to a consideration of the only remaining issue, that of the quantum of the award.
The evidence is clear that Mrs. Chandler sustained a violent blow on the left forehead which caused the formation of a large hematoma accompanied by ecchymoses and resulting occipital headaches, injuries to the cervical spine and lower back, and various bruises and lacerations of a less serious nature. Plaintiff's principal claim for damages results from her serious loss of hearing in both ears, allegedly resulting from the blow to her head. Careful consideration of the record discloses that Mrs. Chandler, after being taken to the hospital in Ruston the evening of the accident on May 6, 1959, was examined by Dr. H. S. Roane, who found she was suffering principally from contusions to the head and the right knee, with evidences of a possible concussion. However, without hospitalization in Ruston, Mrs. Chandler was permitted to return to Shreveport, where she was examined by Dr. Albert L. Bicknell at the Willis-Knighton Hospital on the same evening. The examination of this witness disclosed the same findings noted by Dr. Roane, together with muscular spasm and tenderness of the cervical spine. Mrs. Chandler was not hospitalized until a week later, being admitted on May 13th and discharged approximately one week later. Plaintiff was last examined by Dr. Bicknell on August 12, 1959, at which time, according to his testimony, the hematoma had disappeared, leaving, however, some deep scar tissue. The first examination of Dr. Frank L. Bryant, a specialist in the eye, ear, throat and plastic surgery, was made May 9, 1959. This witness found a deep hemorrhage of both ears and the patient was complaining of the loss of hearing. Briefly summarized, Dr. Bryant's testimony showed that he had made twelve audiograms during the months of May, June, October, November and December of 1959, and July of 1960, all of which disclosed a bilateral lesion type of deafness. The witness had an independent check made by an expert representative of the Beltone Hearing Aid by audiograms on June 30, 1960, which confirmed his own findings. On the basis of plaintiff's history that she suffered no loss of hearing before the accident, the witness assumed and concluded that the deafness was a result related to the injuries sustained in the accident. This witness saw, examined and treated the plaintiff twenty-four times prior to January 1, 1960, and five times following said date, and his conclusion was a forty to fifty per cent loss of hearing in each ear, resulting from what he described as a bilateral acoustical trauma, from which he deduced that plaintiff had originally suffered a concussion.
Dr. A. Scott Hamilton of Monroe, an orthopedic specialist, examined plaintiff on April 13, 1960, and in deposition taken November 9, 1960 testified that he found evidence of a mild to medium spasm of the cervical and lumbar spines, traumatic in origin, accompanied by a tenderness and pain on pressure over the area of the greater occipital nerves.
Plaintiff was referred by Dr. Bicknell to Dr. Heinz K. Faludi, of Shreveport, who made an examination on September 16, 1960, at which time plaintiff was complaining of occipital headaches, low back pain, pain in both legs and loss of hearing. *613 Dr. Faludi made no examination with respect to the back condition for which plaintiff was still under treatment by Dr. Bicknell, and his examination and conclusions related exclusively to the complaint of headaches. The findings of this witness disclosed an original cerebral concussion dependent upon the reliability of the history of unconsciousness as given by the patient. The headaches were considered to be a secondary result of the injury to the cervical spine, and in this connection evidence of occipital nerve tenderness and neuralgia involving these nerves was disclosed by the examination. The doctor testified that he ascribed the headaches to the cervical spine injury and the development of neuralgia which often go together, are difficult to treat and cause prolonged pain. The witness made two further examinations of plaintiff, the last being on November 2, 1960, which did not serve to change his findings and conclusions.
As opposed to the evidence adduced by testimony of plaintiff's medical experts, defendant offered the testimony of Dr. C. B. Flinn of Monroe, an eye, ear, nose and throat specialist, who made an examination of plaintiff on June 27, 1960, and testified by deposition taken on November 9, 1960. In testing plaintiff's hearing this witness made two audiograms, which he testified did not correspond; he did not give a percentage estimate as to the loss of hearing and concluded that whatever loss had been suffered by plaintiff was not the result of trauma. It is pertinent to note that this witness examined plaintiff only once, which examination involved approximately thirty minutes time.
We think the medical testimony clearly preponderates in favor of plaintiff, and particularly with respect to the loss of hearing. We are convinced that the same resulted from the effect of the traumatic injuries sustained in the accident. This conclusion is further corroborated by the testimony of numerous lay witnesses on behalf of plaintiff to the effect that prior to the accident the plaintiff's hearing was unimpaired, whereas subsequent thereto it was seriously deteriorated. This testimony stands uncontradicted in the record.
We think one element in connection with our above conclusions is worthy of particular note and this involves the question as to whether plaintiff actually suffered a concussion. While it is true that certain witnesses on behalf of defendant testified that following the accident Mrs. Chandler appeared to have full possession of her mental faculties and gave no evidence of having sustained a concussion, we do not think this overcomes the testimony of plaintiff herself to the effect that she was rendered unconscious for a brief period of time, and that, for a substantial period of time, she recalled nothing of incidents that occurred, including the medical examinations, following the accident. According to the medical testimony this loss of memory is a typical accompaniment of a concussion, and it is also established by the expert testimony that though a true concussion must effect a period of unconsciousness, this period may be, and frequently is, limited to only a few seconds. Additionally, we point out the convincing evidence of a very serious blow to plaintiff's left forehead which resulted in the unusually severe hematoma. Photographs taken during Mrs. Chandler's hospitalization sometime following the accident lend added support to the conclusion of a severe impact and injury to the head.
We think there is no question as to the fact that plaintiff's availability and opportunity for employment were vitally affected by her loss of hearing resulting from her injuries. The record does not contain evidence that plaintiff's hearing can be restored to any substantial degree by a hearing aid, and, in any event, it is certain that at the time of trial, more than eighteen months subsequent to the occurrence of the accident, and unquestionably for a substantial period of time thereafter, plaintiff was incapable of holding a clerical *614 position which had been her line of work for a number of years prior to the accident.
Our Supreme Court has twice held that a substantial degree of deafness constitutes total disability. Nomey v. Pacific Mut. Life Ins. Co., 212 La. 820, 33 So.2d 531, 1 A.L.R.2d 946; Patterson v. Metropolitan Life Ins. Co., 194 La. 106, 193 So. 478. These authorities approved the liberal rule that "total disability" does not mean absolute helplessness, but the inability to do practically or substantially all the material acts of a claimant's occupation in the usual and customary manner.
We think it has been clearly proven that plaintiff's disability in the above enunciated respect constituted a serious and substantial element of damages. On the other hand, we are equally convinced that plaintiff failed to prove that her condition would continue to be a permanent obstacle to any future gainful employment in the capacity to which she had been accustomed.
The opinion of the district judge allocated his award of damages as follows:

Pain, suffering and partial
impairment of hearing $10,000.00
Medical and hospital bills 1,453.88
One year disability on the
basis of earnings of $250.00
per month 3,000.00

We find no fault with the above award except with reference to the damages for loss of wages resulting from disability. The record fixes the monthly salary which plaintiff was earning prior to the accident in the performance of her work, which she was unable to continue, at $275 per month, and we are further of the considered opinion that the record completely justifies the reasonable conclusion of the continuance of this disability for an additional period of time. Accordingly, we think the amount of the judgment in compensation for the claim in this respect should be increased from the sum of $3,000 to the amount of $6,600, or a net increase of $3,600.
For the reasons assigned the judgment appealed from is amended by increasing the principal amount of the award made therein from $14,453.88 to $18,053.88, and as amended the same is affirmed at appellant's cost.