GULOTTA, Judge.
This action was brought by plaintiff-appellant, Gaetano A. Morgavi, Jr.,[1] a prospective purchaser of real property to recover his deposit of $2,100 and in addition thereto damages from the vendor, defendant-appellee. The basis of plaintiff’s claim is that the title to the property is not merchantable for the reasons that: (1) the improvements on the property violate the Zoning Ordinance of the City of New Or *280 leans, and (2) the improvements violate the title restrictions which restrictions were not made known to plaintiff.
The defendant filed a reconventional demand for damages in the amount of $2,-370.30 alleging that the deposit was forfeited in accordance with the terms of the agreement because plaintiff failed to take title to the property.
The trial court dismissed plaintiff’s action because of his failure to prove by a preponderance of evidence that the title to the subject property is not merchantable. The reconventional demand was also dismissed for the reasons that the defendant failed to comply with the terms of the written contract in that he made no tender of title and that the defendant did not present evidence showing that he was damaged in any way.
Plaintiff appeals the adverse judgment of the trial court dismissing the main demand. Defendant, however, did not appeal from the judgment below.
The question before us is whether plaintiff proved by a preponderance of evidence that the title is not merchantable and is therefore under the agreement entitled to the return of the deposit as well as any amount for damages or losses incurred. However, in addition, other provisions of the contract affect the ultimate disposition of the funds on deposit.
The lot in question, Lot 27-B, was originally part of a tract measuring 42 feet in width by a depth of 120 feet, fronting on West End Boulevard, with the rear on a 15 foot wide alley or easement running through the square between Homedale Avenue and Florida Avenue. The location of the lot is almost equi-distant between the two aforementioned streets.
Prior to defendant’s acquisition of the lot, a portion was fronting on West End Boulevard, which frontage was acquired by the State of Louisiana in expropriation proceedings to be used for an egress ramp off Interstate Highway 10. On April 30, 1964, defendant acquired the lot, and improvements consisting of a house and carport were placed on the lot in September of 1964. The agreement to purchase which is the subject of this suit was entered into on October 24, 1964, between Morgavi and the defendant and contains the requirement that the seller deliver a “merchantable title.” That provision reads as follows:
“The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, * * *" (emphasis added)
The term “merchantable title” has been defined as:
“ * * * one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and apprised of the question of law involved. It need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market.” Roberts v. Medlock, 148 So. 474, 476 (La.App.2d Cir. 1933)
It becomes clear that not all seeming defects render a title unmerchantable. The basic criterion to challenge a merchantable title is that there be the possibility that third parties to the action might at a later time make claims of a substantial nature against the property and hence subject the vendee to serious litigation. Schaub v. O’Quin, 214 La. 424, 38 So.2d 63 (1948); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Rodriguez v. Schroder, 77 So.2d 216 (La.App.Orl.App.1955).
*281 The first contention of plaintiff that the title to Lot 27-B is not merchantable is predicated upon alleged violations of the Comprehensive Zoning Ordinance of the City of New Orleans. However, at no time during the course of the trial was the Ordinance or any of its provisions offered in evidence. Plaintiff, nevertheless, argues that it is incumbent upon the court to take judicial cognizance of the Ordinance. In connection with this contention the following provisions are applicable. LSA-R.S. 13:3711 reads as follows:
“Copies of any books, records, papers or other documents of any of the executive and administrative departments, boards, and agencies of this state, and copies of any books, records, papers, or other documents of any of the political corporations, bodies politic, boards, departments and agencies of this state and the parishes and municipalities thereof, when certified as being true copies by the official, officer or employee in whose custody they may be, shall be admitted in evidence in all courts of this state, equally with the originals of such books, records, papers or other documents.” (emphasis ours)
Further, LSA-R.S. 13:3712 provides:
“A. Certified copies of books, records, papers or other documents provided in R.S. 13:3711 shall be prima facie proof of the existence and contents of the originals and of any act, transactions or occurrence or event as a memorandum of which said books, records, papers or documents were kept or made.
“B. All courts of record in the state shall take judicial cognizance of the municipal ordinances and parochial ordinances which may be enacted by governing authority of any town, city, municipality, or parish within their respective jurisdictions whenever certified copies of such ordinances have been filed with the clerk of said court. The clerk shall keep a record of such ordinances filed with him. It shall not be necessary to file more than one copy of any ordinance with the clerk in order that judicial cognizance be taken thereof. Such certified copies may be filed with the various clerks of court either by the proper custodian of the ordinances of respective town, city, municipality or parish, or any lawful officer of the court.” (emphasis ours)
Plaintiff has failed to offer in evidence in the trial court a copy of the Zoning Ordinance as proof of its existence. Clearly, a properly certified copy is prima facie evidence of the original and may be admitted in evidence. Plaintiff, however, offered no such proof and furthermore made no attempt to comply with the dictates of R.S. 13:3712 and show that the required certified copy of the Zoning Ordinance upon which he bases his case had ever been filed with the clerk of the district court.
In the case of Chandler v. Grain Dealers Mutual Insurance Company, 131 So.2d 606 (La.App.2d Cir. 1961) the court refused to permit the introduction into evidence of a copy of an ordinance because there was failure of compliance with R.S. 13:3712. The Court stated on Page 611 of its opinion :
“The copy of the ordinance tendered in evidence in the instant case bore the certificate of the Mayor, but it was not shown that such official was the keeper of the records. Additionally, it must be observed that the above quoted provision requires judicial notice of a municipal ordinance only when a certified copy thereof has been filed with the Clerk of Court. The requirement was not established in connection with the tender of the ordinance and it would therefore appear obvious that the objection should have been sustained and the admission of the document in evidence refused.” (emphasis ours)
In view of the language in Chandler, supra, and because the record before *282 us is devoid of evidence indicating compliance with R.S. 13:3712, we cannot take judicial cognizance of the Comprehensive Zoning Ordinance of the City of New Orleans.
Assuming, arguendo, that the Ordinance had been properly introduced in evidence and was a part of the record before us, we address ourselves to the effect of the Ordinance. The question presented is whether by virtue of the expropriation proceedings wherein the frontage on West End Boulevard was taken, the complete nature of Lot 27-B was transformed so that the improvements thereon violated the Ordinance in that the portion which was the front of the lot became the rear and the original rear area of the lot became the front thus necessitating access to and from the lot by way of what was originally a service alley.
The result of this change, according to plaintiff, is that although the improvements were built in compliance with the zoning restrictions at such time when the lot fronted on West End Boulevard, after the taking of the frontage by expropriation, the improvements placed on the lot violated the Zoning Ordinance.
The trial court stated in written reasons that “ * * * plaintiff has failed to prove by any evidence that the improvements on the property violate any of the zoning ordinances of the city. The only witness produced by the defendant testified that a lot once established as a lot containing the minimum required square foot area is not re-classified when a portion thereof is taken for highway purposes.
“While citing in plaintiff’s petition and in ‘trial brief’ many of the zoning ordinances’ requirements, plaintiff has failed to prove that the property in question violated any of these said zoning requirements or restrictions.
“With reference to plaintiff’s claim with reference to the cutting of an alley in the rear of the property or the erection of a fence in front of the property by the State Highway Department, neither of these actions by the Highway Department result in making the title to the property in question unmerchantable. * * * ”
We concur with the reasoning of the trial judge. The only evidence of the effect of the taking by expropriation as it relates to the Zoning Ordinance is the testimony of Frank E. Robin, Chief Building Inspector for the Department of Safety and Permits, a defense witness. Mr. Robin testified that if a lot is a “lot of record,” such as the one in question, and subsequently a portion of it is taken by the state, the Safety and Permits Department of the City of New Orleans continues to treat it as a lot of record. Therefore, the Department of Safety and Permits does not regard this lot, insofar as zoning requirements are concerned, as having been altered by the expropriation. Lot 27-B, insofar as the muncipality’s records reflect, exists with the same measurements as before the expropriation. Accordingly the Zoning Ordinance was not violated by the construction of the improvements.
The record, as pointed out by the trial judge, is woefully lacking in support of plaintiff’s contention that the title to the property is unmerchantable because of the violations of the Zoning Ordinance of the City of New Orleans. Plaintiff’s further contention that the improvements violate the title restrictions and that these restrictions were not made known to plaintiff and therefore the title is unmerchantable is not supported by the record and is equally without merit.
The title restriction violation which was subject of plaintiff’s complaint is that the improvements were not set back the required 15 feet from the front property line. Again, the contention of plaintiff is the same as that argued in connection with the violation of the Zoning Ordinance in that the taking by expropriation transformed the lot in such a way that the improvements violated the title restriction. This contention was disposed of in connection *283 with plaintiff’s argument relating to the violations of the Zoning Ordinance; therefore, further discussion of this issue is unnecessary. The other title restrictions imposed on the property being inapplicable are thus not in contest.
Plaintiff’s further contention that he is relieved of his obligation to comply with his offer to buy because the title restrictions were not disclosed to him and that those restrictions would affect the use or resale of the property was properly disposed of by the trial judge. The agreement to purchase specifically states that the property would be subject to all title restrictions:
“Property sold and purchased subject to all title and zoning restrictions on record, or by-laws * * * ” (emphasis added)
Certainly the above provision in the contract should have alerted plaintiff to the possibility of existent restrictions. Regardless, these restrictions are a matter of public record. Therefore, the purchaser had constructive knowledge and notice of the existence of them. The prospective vendee buys subject to any restrictions which may be of record. Thus, plaintiff’s contention that they were undisclosed is also without merit.
Accordingly, we find the trial judge properly concluded that plaintiff failed to prove that the title was not merchantable. The trial judge also concluded that the defendant was not entitled to have the deposit forfeited as sought by him in the recon-ventional demand because defendant had not tendered title to the plaintiff. The defendant did not appeal from that judgment.
A prerequisite to the deposit being forfeited to the seller upon purchaser’s failure to take title is that tender of title be made to purchaser prior to the expiration date in the contract.
Defendant herein did not tender title, thus he is not entitled to have the deposit forfeited. Therefore, we must look to the terms of the contract for disposition of the deposit. The contract provides:
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.”
In the absence of the demand for specific performance as provided in the contract, the effect of the reasoning employed herein is to place the parties in the status quo; i. e., the return of the deposit to the purchaser. While on the face this result appears to be inconsistent, this court is left with no alternative in view of defendant’s failure to tender title.
Accordingly, the judgment of the trial court dismissing plaintiff’s demand for return of the deposit is annulled and set aside. The judgment of the trial court dismissing plaintiff’s demand for damages is affirmed. The judgment dismissing defendant’s demand for forfeiture of the deposit and damages is affirmed.
It is now ordered that the deposit in the sum of $2,100 be returned to the plaintiff herein. It is further ordered that plaintiff’s demand for damages be and the same is hereby dismissed. It is further ordered that defendant’s demand for forfeiture of deposit and for damages be and the same is hereby dismissed. Costs to be paid by defendant-appellee.
Reversed in part, affirmed in part and rendered.

. The widow and children of Morgavi were substituted as parties plaintiff after the death of plaintiff.