427 So.2d 1271 (1983)
Fount L. SANDERS, et ux, Plaintiffs-Appellees,
v.
William L. RUDD, III, Defendant-Appellant.
No. 15177-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
*1272 Bodenheimer, Jones, Klotz & Simmons by J.W. Jones, Shreveport, for plaintiff-appellee.
Schober, Clawson & Brabham by John L. Schober, Jr. and Russell O. Brabham, Shreveport, for defendant-appellant.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
PRICE, Judge.
This is an action by the vendors for specific performance of an alleged agreement to purchase an oil, gas and mineral lease. Defendant-vendee appeals the judgment of *1273 the trial court ordering him to purchase the property pursuant to the alleged agreement. The issues for consideration are (1) whether the petition properly stated a cause of action, (2) whether the agreement was invalidated for lack of a written mandate between vendors and the attorney who negotiated the sale, (3) whether parol evidence was admissible to prove the agency relationship, and (4) whether the lease itself was suggestive of litigation such that the vendee could not be compelled to accept title.
The relevant facts of this case are essentially undisputed. Plaintiffs are lessees of the mineral interests in certain properties in Vernon Parish. The defendant is an individual engaged in the oil and gas industry for investment purposes. Subsequent to telephone conversation with Charles B. Bice, an attorney in Winn Parish, defendant made an offer by letter to purchase the mineral lease of plaintiffs on 2,729 acres in Vernon Parish on the following terms:
1. $35.00/acre
2. 81.25 net revenue interest as to all depths other than the Wilcox.
3. 78% net revenue interest for those depths in the Wilcox formation.
Bice conveyed plaintiffs' acceptance of this offer to defendant by letter dated July 17, 1981, which acknowledged receipt of Rudd's letter, stated that the terms therein were acceptable to the Sanders, and referred to future arrangements to deliver the assignments.
With defendant's assent, Bice then prepared the necessary act of assignment which was signed by plaintiffs and submitted to defendant. Defendant testified that he then told Bice he would begin checking title to the property and mail a check payable to plaintiffs when that was satisfactorily completed. Bice contacted Rudd several times during the month of August, 1981, with regard to payment for the assignment. On August 24th, the defendant informed Bice that he could not conclude the transaction because he did not have the money, and that he had decided the deal was not right for his company. He then returned the act of assignment to Bice.
By letter dated August 28, 1981, Bice made formal demand for payment. After Rudd failed to respond, this suit was filed for specific performance.
Defendant filed an exception of no cause of action based on the contention that the agreement was unenforceable because his offer to purchase was directed to Bice rather than to plaintiffs, and Bice could not make a valid agreement to sell without a written mandate from plaintiffs. The exception was overruled and the case proceeded to trial on the merits. The lower court concluded that the defendant could not complain of lack of written authority because he failed to object when made aware of the agency relationship between Bice and the plaintiffs. The court also rejected defendant's claim that the lease was not merchantable because of a self-terminating provision. Judgment was therefore rendered ordering specific performance.
The defendant first contends that the trial court erred in rejecting his exception of no cause of action. He argues the petition alleged neither a written agreement between the parties nor specific written authority for their attorney to act on their behalf; therefore, there is no valid agreement and no cause of action.
It is axiomatic that the exception of no cause of action raises the question of whether the allegations of the petition entitle the petitioner to a remedy under any theory of law. For the purpose of deciding this exception, all well-pleaded allegations of fact in the petition must be accepted as true. Every reasonable interpretation must be afforded the language of the petition so as to maintain its sufficiency and afford the plaintiff his or her day in court. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Androwski v. Ole McDonald's Farms, Inc., 407 So.2d 455 (La.App. 1st Cir. 1981), writ denied 409 So.2d 666 (1982). We find the trial court properly overruled defendant's exception of no cause of action.
We recognize that, according to LSA-C.C. arts. 2996 and 2997, a mandate to buy *1274 or sell must be express and special and, with regard to immovable property, a writing is required. See also LSA-C.C. arts. 2275 and 2992; Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682 (1949). We are also mindful that our law characterizes a mineral lease as immovable property. See LSA-R.S. 31:2, 16 and 18.
The defendant relies on Lake v. LeJeune, 226 La. 48, 74 So.2d 899 (1954), a suit by a buyer whose offer had allegedly been accepted by the attorneys of record for the defendants. The court held the acceptance ineffective and the alleged agreement unenforceable for lack of allegations of fact from which it might be concluded that the defendant had granted any express authority to their attorneys to confect a binding agreement to sell.
However, the lack of an express written power of attorney does not render a transaction involving immovable property an absolute nullity or subject it to nullity at the will of third persons. Rather, it is merely voidable as between the parties. Bolding v. Eason Oil Co., 248 La. 269, 178 So.2d 246 (1965). As noted by our Supreme Court in Rebman v. Reed, 286 So.2d 341 (La.1973), appeal after remand 335 So.2d 37 (La.App. 4th Cir.1976), certiorari denied 338 So.2d 699 (La.1976), our substantive law does recognize that a principal may ratify the unauthorized acts of his agents. See LSA-C.C. arts. 1840 and 3010. Therefore, where the petition alleges facts to support a conclusion of ratification by the principal, plaintiffs have the right to attempt to prove these factual allegations on the merits.
In the instant case, it might be said that the very filing of the petition by plaintiffs connotes ratification of the agent's actions, inasmuch as the suit is for the purpose of enforcing the alleged agreement made on their behalf by their attorney. The petition goes even further, however, in that it alleges ratification of the agent's actions by the plaintiffs. Thus, the trial court properly allowed the plaintiffs the opportunity to prove these allegations at trial on the merits.
The defendant contends on the merits that the agreement reached through his negotiations with plaintiffs' attorney was invalid for lack of express written authority, and that parol evidence to prove the agency relationship was improperly admitted since such agreements are required to be express and in writing. We concede that this is an accurate statement of the general rule. LSA-C.C. arts. 2275, 2992 and 2996; Lake v. LeJeune, supra. However, a contract entered into by an agent, though voidable for lack of authority to act, may be ratified by the principal. Rebman v. Reed, supra; Daigle Associates, Inc. v. Coleman, 385 So.2d 349 (La.App. 1st Cir. 1980). In the law of agency, ratification is the adoption by one person of an act done on his behalf by another without authority. It amounts to a substitute for prior authority. The burden of proof is on the party asserting ratification and a clear and absolute intent to ratify the act must be shown by the facts. Bamber Contractors v. Morrison Engineering, 385 So.2d 327 (La.App. 1st Cir.1980), and cases cited therein. LSA-C.C. art. 1840 provides in pertinent part:
"Art. 1840  * * * Contracts, however, made in the name of another, under void powers, will be valid, if ratified by the principal before the other contracting party has signified his dissent to the agreement."
In this case, both principal and agent testified that the agent had express, but not written, authority to negotiate a binding agreement for sale of the subject lease. Defendant made a written offer for the lease and plaintiffs' attorney accepted the offer on their behalf in writing. Plaintiffs then ratified the attorney's actions on July 22, 1981, by executing a written act of assignment prepared by their agent with the assent of the defendant. This act was delivered to defendant, who accepted it and, by his own admission, held it pending a title examination.
Defendant also admitted he promised the agent for the plaintiffs, after delivery of the act of assignment, that he would send *1275 him the money owed under the agreement. He did not inform Bice until one month after the act of assignment that he did not wish to conclude the agreement because "the deal was not right" for his company.
It has been held that an agreement to purchase affecting immovable property can be ratified only in writing, and that parol evidence should be inadmissible to prove ratification of a mineral lease at trial on the merits. Daigle, supra. However, in the instant case, plaintiffs' written ratification of their agent's act, the formal act of assignment, was introduced into evidence, thus curing any defect which might have arisen from the trial court's admission of testimony with regard to Bice's authority. We conclude that the essential elements of an agreement to sell, and the written ratification thereof by the plaintiffs, have been conclusively proven.
Defendant's final contention is that the trial court erred in ordering specific performance of the purchase agreement because the lease itself contains a provision which rendered it self-terminating. He argues he should not be required to purchase the lease because it is suggestive of future litigation between the original lessor and the lessee or his assignee, and plaintiffs therefore cannot deliver a merchantable title to the leasehold rights.
The paragraph in question reads as follows:
"18. Anything in this lease to the contrary notwithstanding, if oil and/or gas production is not established or a new bona fide exploratory test is drilled on or before September 14, 1982, this lease will become null and void."
Under the strict meaning of this language, if the lessee does not timely establish production he loses his leasehold rights, but if he does drill a well to establish production within the same time frame, he also loses his leasehold rights. The trial court found that the word not was inadvertently omitted from the second clause of the paragraph, and that the word may be supplied by judicial interpretation and construction. Thus he found the lease is not suggestive of serious litigation and held the defendant to specific performance of the agreement to purchase. It is urged that the lower court's judicial interpretation of the lease does not cure the defect therein since it is binding only on the parties to this suit and does not affect the original lessor.
In Schaub v. O'Quin, 214 La. 424,38 So.2d 63 (1948), the Louisiana Supreme Court stated:
"In the jurisprudence of this court are to be found many cases involving actions to compel specific performance (of contracts to purchase immovable property) in which the defendants urged defective titles by reason of alleged outstanding interests in third persons who were not parties to the suits. In some of them specific performance was ordered, the court deeming the legal questions raised by the respective proposed vendees to be free of doubt and the objections obviously groundless. In others, however, the relief sought by the plaintiffs was denied; and the denials were not primarily because the court concluded that the titles tendered were actually defective. The decisions were grounded on the theory that third persons, not parties to the actions and unaffected by the judgments to be rendered, could thereafter make claims of a substantial nature against the titles and further subject the defendants to serious litigation." (emphasis supplied.) Id. at 65.
Our courts have reasoned that a purchaser cannot be compelled to accept a title burdened with a claim having a substantial basis and thus suggestive of serious future litigation. The basic criterion is that there be the possibility that third parties might at a later time make claims of a substantial nature against the property and subject the vendee to serious litigation. Schaub, supra; Morgavi v. Mumme, 254 So.2d 278 (La.App. 4th Cir.1971), reversed on other grounds 270 So.2d 540 (La.1972).
Language employed in contracts is usually interpreted according to the customary meaning of the words. However, courts *1276 must also ascertain the mutual intention of the parties. Therefore, clauses which, if taken literally, would lead to unreasonable consequences must be construed according to what was the probable intention of the parties under all the circumstances. LSA-C.C. art. 1945; Losecco v. Gregory, 108 La. 648, 32 So. 985 (1901); Crow v. Monsell, 200 So.2d 700 (La.App. 2d Cir.1967).
It is clear from the circumstances of this case, since a literal interpretation of paragraph 18 would nullify the lease, that the omission of the word not in the second clause was nothing more than a clerical error. It would be absurd to hold otherwise, for the lessor and original lessee would have confected an agreement impossible to perform. We conclude that no serious contention could be made by the lessor that the language of this paragraph was intended to be so strictly construed as to render the lease itself meaningless. Under these circumstances, it was proper to supply the omitted word and grant specific performance of the purchase agreement to the vendors.
For the reasons assigned, the judgment is AFFIRMED. All costs of appeal are assessed against defendant-appellant.