178 So.2d 246

William W. BOLDING

v.

EASON OIL COMPANY et al.

No. 47671.

July 2, 1965.

Rehearing Denied Sept. 30, 1965.

William J. Daly, James E. Wright, Jr., Patrick J. Farrelly, Jr., New Orleans, for plaintiff-relator.

Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., John G. Weinmann, New Orleans, Nathan Greenberg, Gretna, for defendants-appellees.

McCALEB, Justice.

Plaintiff, having acquired from the heirs of John A. Griswold certain mineral leases covering lands located in Sections 9, 10, and 11, Township 14 South, Range 23 East, Parish of Jefferson, instituted this petitory action under authority of R.S. 9:1105 and Article 3664, Code of Civil Procedure, against the widow of George J. Mayronne, Sr., her four children and their respective spouses and Eason Oil Company, which is developing the property under mineral leases granted it by the Mayronnes, seeking to be recognized as the true and lawful owner of the mineral exploratory rights in and upon said land. He asserted, in substance, that the property is illegally in the possession of the Mayronnes and their lessee and that his lessors, the heirs of John A. Griswold, are the lawful owners of the tract having acquired the same by inheritance from John A. Griswold and his wife, Elizabeth Hart, the said Griswold having purchased the property, together with other lands, from Amos B. Merrill by Act before James A. Fahey, Notary Public for the Parish of Orleans dated April 29, 1872 and registered in Book "M", Folio 354, et seq. of the records of Jefferson Parish.

After certain preliminary exceptions filed by defendants had been overruled by the judge, Eason Oil Company and the Mayronnes filed identical answers in which they resisted generally the claims of plaintiff and denied specially his allegation that John A. Griswold had been the owner of the property described in the authentic act passed on April 29, 1872. They averred that, on the contrary, title to the property conveyed by that sale had been placed in the names of Amos B. Merrill and John A. Griswold solely and only for the convenience and benefit of the New Orleans, Mobile and Texas Railway Company which was and had been the true owner of all said property. Admitting that they were in possession of the property alleged in plaintiff's petition, defendants pleaded that the Mayronnes are the lawful owners of the same having been acquired by them through inheritance and, by their authors in title, through a series of mesne conveyances, beginning with a sale on April 26, 1869 from Pascal and Francois Fazende to Amos B. Merrill and a sale on March 27, 1869 by Theodore and Gustave Dufossat to Amos B. Merrill, said Merrill having acquired the property solely for the convenience and benefit of the New Orleans, Mobile and Texas Railroad Company, the true owner of the property (from whom defendants' ownership stems).

Further pleading, the defendants averred that Griswold and all persons holding under

him, including the plaintiff, were estopped from denying the ownership of the Mayronnes in and to the Mayronne tract and that the heirs of said Griswold and plaintiff were also estopped from asserting title, adverse to the ownership of the New Orleans, Mobile and Texas Railroad Company.

In addition, and in the alternative, defendants pleaded the ten-year prescription, acquirendi causa, detailing a series of transfers extending from 1895 until 1947, when George J. Mayronne acquired the property in contest. It was alleged that, during all this period, the property was and has been in the peaceable possession of the respective owners under titles translative of the property and in good faith, to wit—Southside Plantation Company (1895–1918); Ames Farm Land Company (1918–1924); Victorine A. Pitre (1924–1926); Urbandale Farms, Inc. (1926–1932); Jacob W. Newman (1932–1936); Succession of Jacob W. Newman (1936–1939); Horace Newman (1939–1946); George J. Mayronne, Sr. (1946–1947) and the Mayronne Heirs from 1947 on.

After a trial on the issues formed by the pleadings, the district judge found for the defendants and dismissed plaintiff's suit, being of the opinion that the 1872 Fahey Act was not translative of title to John A. Griswold; that, as between Griswold and the New Orleans, Mobile and Texas Railroad Company, the railroad, and not Griswold, was the owner of the property in contest in 1872 and that plaintiff was in no better position than Griswold to assert the claim of title to the property.

On appeal this judgment was affirmed by the Court of Appeal, Fourth Circuit. That Court approved the holding of the district judge that Griswold never acquired title to the property in question and found that there was no consideration for the 1872 Fahey Act. The court further held that, even if the 1872 Fahey Act had been translative of title to Griswold, it could not avail plaintiff forasmuch as certain minutes introduced in evidence (over plaintiff's objection) of resolutions adopted by the Board of Directors of the New Orleans, Mobile and Texas Railroad Company revealed that Griswold was purchasing for the account of the railroad; that these resolutions could be treated as a counter letter, binding upon Griswold and those claiming through him, and that Griswold was a trustee who was bound to account and transfer the property to the railroad of which he was President. See Bolding v. Eason Oil Company, La.App., 170 So.2d 883.

In view of the holdings of the trial and appellate court, defendants' plea of the ten-year acquisitive prescription was not considered. Upon the finality of the Court of Appeal judgment, plaintiff applied for certiorari. The writ was granted, 247 La. 681, 173 So.2d 543 and the case has been argued and submitted for our decision.

At the threshold of the case, we address ourselves to plaintiff's initial specification of error, viz., that the lower courts erred in failing to hold that plaintiff, in acquiring the oil, gas and mineral leases which are the foundation of his cause of action, was entitled to rely on the public records, i.e., the law of registry and that his claim cannot be adversely affected by any documents or writings which do not appear thereon.

■ Preliminarily, however, we must, perforce, consider the initial holding of the district judge and the Court of Appeal that the authentic act passed before James Fahey on April 29, 1872 was not translative of the property purportedly conveyed which included the Mayronne tract. This is so because, in a petitory action, the claimant out of possession must prove his title to the property claimed and, if the Fahey deed does not translate the property to Griswold, plaintiff, as lessee of the Griswold heirs, cannot succeed. See Article 3653(1), Code of Civil Procedure.

The lower courts found that the Fahey act of sale by Merrill to Griswold contained five "declarations or items" which were subject to explanation or interpretation. And in interpreting these recitals (or lack thereof), the courts deduced that the defects in the deed were such as to render it legally ineffective to translate title to the property therein conveyed.

The Fahey Act is copied in full, except for the description of the land, in the opinion of the Court of Appeal (see 170 So.2d pages 885 and 886) and need not be repeated here. Suffice it to say that it is a notarial act in which Merrill, a resident of Boston, Massachusetts declared to the notary that " * * * he does, by these presents, grant, bargain and sell, convey, assign, transfer, set over and deliver, * * unto John A. Griswold, of the City of New York, * * * herein represented by John J. Williamson, of this City, (New Orleans) his duly authorized agent, the said Williamson being here present, accepting and purchasing for said John A. Griswold, his heirs & assigns and acknowledging possession of * * *" the property described therein, which covers the land in contest. The consideration for the sale was stated in the Act to be $52,198.00 (which was in addition to the existing encumbrances and taxes assumed by the purchaser) " * * * as hereinbefore stated, which the said *purchaser* hereby declares and acknowledges to have received to his satisfaction and for which he grants full acquittance and discharge." (Words in parentheses and italics ours.)

The courts below reasoned that the Fahey deed was not translative of the property (1) because John J. Williamson, who appeared as agent for the purchaser, did not exhibit a written authorization to act for Griswold; (2) because the agent bound

Griswold to pay certain encumbrances on the property and hold the vendor harmless in the premises without written authorization so to do; (3) because the agent dispensed with the production of tax certificates and relieved the notary from responsibility without written authority; (4) because the act did not recite that the consideration was paid by the purchaser, but, on the contrary, stated that the agent acting for the purchaser acknowledged that the purchaser had received it and (5) because the sale was made without warranty of the vendor.

We discern no substance whatever in these findings. In the first place, it is perfectly obvious from an examination of the deed as a whole (which is proper in determining the true intent of the meaningless or patently inconsistent statements in a contract) that the recital that the purchaser received the consideration is purely a mechanical and inadvertent error on the part of the notary who wrote the word "purchaser" in the place he intended to write "vendor".

And we likewise find unsound the courts' resolution, based on this apparent error in the verbiage of the deed, that title did not pass as there was no consideration paid for the transfer. Even had the act failed to state the payment of a consideration, this would not justify a holding that the deed was not translative of the prop-

erty therein described. On the contrary, it has been many times held that a quitclaim deed reciting no consideration at all is translative of property therein quitclaimed and, therefore, sufficient to support a plea of the ten-year acquisitive prescription. See Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225 and cases there cited. Here, the act contains the statement that the vendor grants, conveys, assigns, transfers and delivers unto John A. Griswold. This alone suffices to transfer title to the purchaser and, of course, (contrary to the belief of the district judge) the fact that the sale was made without warranty of the vendor is no obstacle to the tradition of title.

Moreover, the failure of the act to recite that Williamson was acting under an express power of attorney, which is required by Articles 2996 and 2997 of the Civil Code, does not render the transaction an absolute nullity or subject it to nullity at the behest of third persons. Rather, it was merely voidable as between the parties to the sale if no express authority to purchase was actually given. Articles 1840, 2272 and 3010 of the Civil Code. Indeed, since defendants have pleaded and depend on this acquisition by Griswold as a basis for their title, it is apparent that they are in no position to here claim that Griswold's agent was without authority to acquire the property for the benefit of the New Orleans, Mobile and Texas Railway Company from

whom defendants' title is said to emanate. See Sanders v. Tremont Lumber Co., 143 La. 181, 78 So. 439 and Consolidated-Progressive Oil Corp. v. Standard Oil Co., 158 La. 982, 105 So. 36 and cases there cited. We also add that, even if Williamson did not have written authority to represent Griswold in the purchase of the property, his act in so doing was subject to ratification by Griswold and it appears to us that, if Griswold did not ratify Williamson's purchase of the property during his lifetime, his heirs unquestionably did so, when they leased the property in contest to plaintiff.

■ Nor do we find any sound basis for the ruling of the lower courts that plaintiff could not rely on the public records because he had full knowledge of all of the claims of the defendants and of the fact that defendants and their ancestors in title had been in possession of the property for many years in the quality as owner and had paid all taxes thereon.

In opposing plaintiff's position that, as mineral lessee of the heirs of Griswold, he is bound only by the recitals of the public records, defendants rely in the main on a resolution of the Board of Directors of the New Orleans, Mobile and Texas Railroad dated February 21, 1872, at a time when Griswold was President of the Company. This resolution, admitted in evidence over plaintiff's objection, is dehors the public records. It declares, in substance, that Amos D. Merrill of Boston is authorized and directed to convey the lands (which he subsequently conveyed by the Fahey act of April 29, 1872) to John A. Griswold in his individual name and capacity, without the payment by Griswold of consideration, but that said Merrill is directed to acknowledge payment of the consideration money stated in the sale and that the corporation looks to Griswold to account for these lands "which he takes in fact only for this corporation".

It is, of course, doubtful whether this resolution should have been received in evidence in the case as plaintiff, in our opinion, as lessee of the Griswold heirs was entitled to be considered, under R.S. 9:1105, in the same category as a purchaser of land on the faith of the public records.

Article 2266 of our Civil Code provides that all sales, contracts and judgments affecting immovable property which are not recorded shall be utterly null and void except between the parties thereto. And R.S. 9:2721 declares:

"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is

situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties."

These statutes were not referred to by the Court of Appeal and, in its opinion, the court concluded that the certified copy of the resolution of the Board of Directors of the railroad, although unsigned by Griswold and not recorded in the public records, was binding on Griswold and his heirs and plaintiff to the same extent " * * * as would a counter letter had one been executed by Griswold".[1] In view of this, we assume that the court did not deem the above cited law applicable because, apparently, it must have found, conformably with the ruling of the district judge, that plaintiff, having acquired knowledge of all the facts at the time of his purchase from the Griswold Heirs, could not rely on the public records. But this was error. It has long been the settled-jurisprudence of this Court that knowledge dehors the record of outstanding titles, which have been recorded since the title under which a claim of ownership is made, does not deprive the claimant of the status of purchaser on the

faith of the public records and, entitled as such, to protection under the laws of registry. This is exactly what our predecessors held in McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910) and that doctrine and rule of property has been upheld and applied uniformly ever since.[2]

Hence, as the validity of plaintiff's title is to be judged by the recitals of the public records, it is patent that the record title to the lands in question still stands in the name of John A. Griswold and that New Orleans, Mobile and Texas Railroad, from whom defendants claim, had no title of record to any of the property contained in the Fahey act of April 29, 1872.

Since we have found that, according to the public records, plaintiff has a better title to the land in contest than the defendants, we pass on to a consideration of defendants' plea of the ten-year acquisitive prescription. As stated in the beginning of this opinion, defendants alleged in the alternative, in addition to other claims of acquisitive prescription by subsequent owners of the Mayronne tract, that Southside Plantation Company acquired a large tract by deed translative of title from Oliver

---

1. Albeit not essential to the decision here, it would appear that this ruling is contrary to our holdings in Scurto v. LeBlanc, 191 La. 136, 184 So. 567 (1938) and other cases indicating that, in order to establish title in one who has never held a written title, the only admissible proof is a written document translative of title signed by a title owner. See In-

golia v. Lobrano, 244 La. 241, 152 So.2d 7 (1963); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); and Little v. Haik, 246 La. 121, 163 So.2d 558 (1964).

2. In this connection, see R.S. 9:2722, redefining this doctrine and enlarging its scope to include any third person, who acquires royalties or an interest in any oil, gas or mineral lease.

Ames and Oakes A. Ames on June 5, 1895; that Southside took physical, open and notorious possession of the property in good faith by the operation and functioning thereon of a sugar plantation with stables, sugar house, blacksmith shop and employees' quarters, orchard, livestock and crop farm, which operations were begun in 1895 and extended until 1918 (when the plantation was sold to Ames Farm Land Company) and that, from 1895 through 1917, Southside paid all taxes assessed against the land.

Plaintiff does not contest the fact that the title acquired by Southside from Oliver Ames and Oakes A. Ames under the 1895 deed is translative of the property, the description of which includes the land now in contest. However, he contends that defendants have failed to show corporeal possession by Southside during the period that it had a title to the property and, further, proclaims that the evidence discloses that Southside was in legal bad faith.

Before discussing the testimony and issues relating to the plea that Southside acquired a prescriptive title, certain legal principles must be kept in mind. Article 3478 of the Civil Code provides "He who acquires an immovable in good faith and by just title prescribes for it in ten years." Article 3479 sets forth that four conditions must concur in order to acquire by this prescription: (1) good faith on the part of the possessor; (2) a title translative of

the property; (3) possession during the time required by law and (4) an object which may be acquired by prescription.

Under Article 3481 it is declared that good faith is always presumed in matters of prescription " * * * and he who alleges bad faith in the possessor, must prove it." Furthermore, it is sufficient under Article 3482 that possession be commenced in good faith and subsequent bad faith does not prevent the prescription.

 In the instant case, as we have already stated, the property in dispute was part of a large tract acquired by Oliver Ames from New Orleans, Mobile and Texas Railroad in 1874. And, by sale of the United States Marshal in 1881, this land was transferred to Oakes A. Ames. In the deed to Oliver Ames and the deed to Oakes Ames, it is recited that the property is the same property " * * * which the aforesaid John A. Griswold acquired title from Amos R. Merrill by an act passed before James Fahey, Notary, on the 29th April, 1872." Thus, it appears that both of the Ames were in legal bad faith as they were placed on notice that the title to the property acquired from the railroad and the Marshal's sale stood in the name of John A. Griswold.

On June 4, 1895, a corporation known as Southside Plantation Company was organized under the general laws of Maine for the purpose of establishing, conducting, op-

erating and managing a "Central Sugar Factory to be located at the South Side and Estelle Plantations so called, in the Parish of Jefferson of the State of Louisiana". According to the certificate of incorporation, one share of stock each was issued in the names of Oakes A. Ames, Oliver Ames, Frank M. Ames, William H. Ames and Hobart Ames with 995 of the original 1,000 shares remaining unissued. The officers of the corporation were William H. Ames, President, and Hobart Ames, Treasurer, and the Directors were William H. Ames, Hobart Ames and Frank M. Ames.[3]

The 1895 sale of Oliver Ames and Oakes Ames to Southside was for a stated consideration of $3,000 cash, the deed being accepted and signed by William H. Ames as President of the Corporation.[4]

Corporeal possession of the property by Southside was avouched by Joseph Bellina, who testified that he moved to this plantation, sometimes called "Ames Farm", with his family in 1894, when he was eight years old; that, at that time and thereafter, the property was operated as a full scale plantation with 75 or more laborers, a sugar house, buildings (separate quarters for colored and white, the overseer's building, the Ames building, in which Frank Ames lived, a blacksmith shop and post office), plantation roads, a railroad and the cultivation of sugar cane. He stated that he left with his family in 1898 and that his work on the plantation, or farm, consisted of "toting water" for the laborers for 15 cents per day; that August Frickens (Old Man August), the stable man of the plantation kept sheep and had fig trees planted back of the drainage canal. (This is the area which plaintiff contends was not under cultivation or possessed by Southside).

Another witness, Frank De Salvo, stated that he came to live on the plantation in 1907 (known to him as Amesville, Millaudon and South Side) with his father who worked there in 1907, when he was 11 years old, and he left in 1910. De Salvo said that he worked planting and hoeing cane and helped clean the boilers in the sugar house; that at that time 75 or 80 laborers worked on the plantation; that there were sheep and goats; that corn was also raised and that he picked figs for "Old Man August" who lived on the back of the levee.

Corporeal possession attested to by these witnesses was accompanied by acts of civil possession, in the payment of taxes from 1895 to 1917 by Southside, as verified by the tax certificate introduced in evidence.

3. It is to be noted that Frank M. Ames was shown to be a Director and Vice President of New Orleans, Mobile and Texas Railroad Company in 1876.

4. The record also shows that, on the same day (June 5, 1895), Southside acquired a much larger tract of land adjoining the tract from Oliver Ames, Oakes Ames and Frank Morton Ames for a consideration of $87,500 cash. William H. Ames, President of the corporation, represented it at this sale.

We think the foregoing proof amply establishes corporeal possession by Southside for the requisite period of time. Plaintiff's contention that the land in controversy is in the back of the back levee and that the witnesses' testimony on possession could not be extended to include any land behind, outside the rear canal and back levee, is simply an argument without factual or legal support, for admittedly the land in contest is included in Southside's title. It is well settled that, when a tract is acquired under a title, the actual possession of a part is equivalent to the possession of all of the property within the limits described in the deed. Civil Code, Articles 3437 and 3498; Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 and cases there cited and Boudreaux v. Olin Industries, 232 La. 405, 94 So.2d 417.

Counsel for plaintiff vigorously profess that possession of Southside Company was not in good faith for the reason that its vendors, Oliver Ames and Oakes A. Ames, were in legal bad faith and that their bad faith must be imputed to the corporation. The basis for this contention is that, since both of Southside's vendors, Oliver Ames and Oakes A. Ames, acquired the property from the Railroad and at U.S. Marshal sale, respectively, under deeds which stated that the legal title of the land was in the name of Griswold, they were charged with knowledge that the vendor railroad did not own the property which

knowledge is imputed by law to Southside because the corporation was composed solely of members of the Ames family—it being shown that Oliver Ames, one of the incorporators, was the father of Oakes Ames and Frank Ames, two of the five incorporators, who were each issued one share of stock.

The record is devoid of any evidence of knowledge on the part of Southside or its President, William H. Ames, who accepted for the corporation, as to the defect in the title of the vendors. Article 3487 of the Civil Code declares that possession under a title leads to the supposition that the possession commences in good faith and Article 3481 provides that "Good Faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."

We do not consider the facts relied on by counsel for plaintiff sufficient to overcome the presumption of good faith or that they require that the legal bad faith of Oliver Ames and Oakes A. Ames be imputed to the corporation. To begin with, neither Oliver Ames nor Oakes Ames was an officer or director of Southside Company. It seems to be the well-settled law that notice to an individual incorporator or stockholder is not notice imputable to a corporation, at least in instances where the stockholder is not the owner of the entire capital stock of the company. See 13 Am. Jur. "Corporations", Sec. 419, page 471. Compare State v. F. B. Williams Cypress

Co., 131 La. 62, 58 So. 1033 (1912). The most that can be concluded from the facts is that apparently Southside was a family corporation but this is not of itself sufficient to justify a holding under the circumstances presented in this case[5] that knowledge of title defects by two of the incorporators is to be imputed to the corporate entity.

In Section 814 of Fletcher, "Cyclopedia Corporations", Perm. Ed. pg. 94, it is stated:

"Since the stockholders of a corporation, individually, are not its agents, and have no authority to bind it, the rule is well settled that notice to individual corporators or stockholders, or knowledge of facts possessed by them, is not notice to the corporation, where there are other stockholders, and where the persons having the knowledge are not also officers of the corporation. Of course, if they are also officers, and the knowledge relates to matters in which they act for or represent the corporation, it is

different. * * * And a corporation may be chargeable with notice of facts known to all stockholders, or to a stockholder owning all the stock. But it is not enough that some of the corporators, but not all, have notice."

Since we find that Southside Plantation Company, by a deed translative of title, possessed the tract it purchased from Oliver Ames and Oakes A. Ames, which included the property in dispute, in good faith for a period in excess of ten years from 1895, it acquired a valid title by prescription which is superior to the mineral leases secured by plaintiff from the heirs of Griswold and, therefore, all successors in title from Southside, including the defendants herein, hold under a good prescriptive title.

For the reasons assigned, the judgment of the Court of Appeal is affirmed.

HAMITER, J., concurs in the result.

---

5. It is apt to observe, at this point, that this is a sale claim emanating from a title defect of over a half century ago which plaintiff has but recently discovered and prosecuted after the property has been in possession under title by numerous persons who undoubtedly held it factually in good faith. While the obvious fact that plaintiff's vendors never thought that they might have a legal title. and heretofore have never asserted any claim of ownership may not be employed to de-

feat plaintiff's claim (as this comes within the province of liberative prescription), the long lapse of time operates by way of evidentiary effect against the justice of the right asserted and should, in the nature of things (inability of the parties defendant to produce proof, documentary and testimonial), move the Court to look with more indulgence on the evidence the defendant is able to produce. See Labarre v. Rateau, 210 La. 34, 26 So.2d 279 and authorities there cited.